IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ST. PAUL GUARDIAN INSURANCE COMPANY, et al., | |
| Plaintiffs, | Case No. 1:15-cv-10324 |
| v. | Hon. Charles R. Norgle, Sr. |
| WALSH CONSTRUCTION COMPANY, | |
| Defendant. | |

**Motion to Compel**

Now comes the Defendant, Walsh Construction Company ("Walsh"), by and through its attorneys, David B. Goodman and Kalli K. Nies, Goodman Law Group | Chicago, *of counsel*, and for its motion to compel pursuant to Rule 34, 37 and L.R. 12(k) and 37, against plaintiffs, St. Paul Guardian Insurance Company, The Charter Oak Fire Insurance Company, and Travelers Property Casualty Company of America (collectively the "Plaintiffs"), states as follows:

**I.     Introduction**

This lawsuit arises from underlying litigation resulting from damage caused by defective products supplied by LB Steel, LLC ("LB Steel") for incorporation into O'Hare Airport's Façade and Circulation Enhancement Project ("FACE Project"). Dkt. #64, p.43, ¶9. Walsh was the general contractor for the FACE Project. LB Steel's defective products caused substantial damage beyond the structures into which they were integrated. Dkt. #64, p.47, ¶25. Walsh was an additional insured under insurance coverage written by Plaintiffs to LB Steel. After a judgment was entered in favor of Walsh and against LB Steel, LB Steel filed for bankruptcy.

1

Plaintiffs initiated this coverage dispute in the wake of LB Steel's bankruptcy, and centers on Plaintiffs' liability to Walsh in excess of $26 million[1]. *See* Dkt. #64, p. 50, ¶47. Consequently, it comes as no surprise that Plaintiffs have tried so hard, through untimely and evasive discovery responses and by asserting literally *thousands* of improper "privilege" claims in their defective privilege logs, to withhold responsive discoverable evidence that establishes their liability. Through its Motion To Compel, Walsh seeks the responsive documents, many of which appear to be adjuster notes and internal emails, that document Plaintiffs' breaches and their liability to Walsh.

## II. Procedural History Underlying This Discovery Motion and Compliance with Rule 12(k).

Walsh issued written discovery to Plaintiffs in February 2020. But in response to delays attributed to the COVID-19 pandemic, Walsh agreed to extend the deadline for responding to the discovery. Plaintiffs failed to meet the extended deadlines. Finally, on July 21, 2020, Plaintiffs produced discovery responses and redacted documents without a privilege log. Walsh sent an initial Rule 37.2 correspondence (**Exhibit 1**) seeking a log in support of the privilege claims, and Plaintiffs provided a defective eight-page privilege log on July 23, 2020. **Exhibit 2**[2]. Walsh promptly identified the defects. *See* **Exhibit 3**. Plaintiffs advised they would supplement their written discovery responses, document production, and privilege log. After multiple additional extensions, between August 14 and October 16, Plaintiffs supplemented their document production incorporating thousands of redactions. However, Plaintiffs failed to cure the defects in their

---

[1] Under the liability insurance policies at issue, third-parties such as Walsh are entitled to pursue actions against the insurers directly following a final judgment against the insured. *See e.g.,* Dkt. 60-5, p. 99.

[2] The bates labels used by Plaintiffs identify the documents from the LB Steel claim file as TRAV-CL-LB, from the Walsh claims file as TRAV-WL-LB and the ESI as TRAV.

2

privilege claims and failed to log *any* of the hundreds of supplemental documents withheld or redacted in the supplemental production. Walsh pressed for a privilege log, but Plaintiffs failed to provide one in support of their thousands of new "privilege" claims.

In the November 10, 2020 joint status report, Plaintiffs advised the Court they would be producing a privilege log "*shortly*." Dkt. #99. "Shortly" turned into months without the supplementation promised by Plaintiffs and *required* under Rule 26(b)(5)(A). Walsh – again - identified the defects in Plaintiffs' privilege log in detail. *See* **Exhibit 4**. On January 21, 2021, counsel for Plaintiffs, Devin Lindsay, and Walsh's counsel, David Goodman and Kalli Nies, participated in a teleconference to discuss the defects in Plaintiffs' discovery responses. This teleconference was similar to the multiple Rule 37 meet and confers that preceded it with Plaintiffs' counsel advising (again) that Plaintiffs would supplement the privilege log soon. The parties engaged in the foregoing communications in compliance with Local Rule 12(k) prior to the filing of this discovery motion.

Finally, on February 8, 2021, Plaintiffs provided the long-promised supplementation - an "updated" eight-page privilege and a new 296-page log. *See* **Exhibits 5 and Exhibit 6.** Plaintiffs' logs ignored both the letter and spirit of Rule 26(b)(5) with (1) Plaintiffs indiscriminately asserting both the attorney-client *and* work product privileges in rote fashion for virtually 100% of the entries in boilerplate fashion ignoring the elements required to establish the privilege claims; (2) offering the same five generic "descriptions" copied and pasted for nearly all entries; (3) failing to identify the people who received the documents (s*ee e.g.* Ex. 5, TRAV-CL-LB 3-11; TRAV-CL-WAL 3, 9-13), and (4) failing to provide the information required about the recipients or authors that is necessary to establish claims of privilege. *See e.g.* Ex. 6, TRAV 3476; TRAV 3483; TRAV 3624; TRAV 3627-28.

Plaintiffs' untimely and generic logs fail to establish the foundation required to support their claims of privilege under the requirements of Rule 26(b)(5). Consequently, Walsh respectfully seeks an order from the Court finding that Plaintiffs have waived their claims of "privilege." *See Surgery Center at 900 North Michigan Avenue, LLC v. American Physicians Assurance Corporation, Inc.*, 317 F.R.D. 620, 632-33 (N.D. Ill. 2016)(insurer waived privilege claims through its untimely and defective privilege logs).

### III. <u>Argument</u>

It was Plaintiffs' burden, as the party withholding responsive materials, to provide a privilege log that describes the nature of *each* document in a manner that allow the claims of privilege to be assessed by the requesting party. *Motorola Solutions, Inc. v. Hytera Communications Corp, et al*, 17 C 1973, 2018 WL 1281393 at *1 (N.D. Ill. Jan. 10, 2018)(emphasis added). The asserting party must identify, "the date, the author and all recipients, along with their capacities, the subject matter of the document, the purpose for its production and a specific explanation of why the document is privileged." *Schmalz v. Vill. of N. Riverside*, No. 13 C 8012, 2018 WL 741395, at *3 (N.D. Ill. Feb. 7, 2018) (citing *Muro v. Target Corp.,* No. 04 C 6267, 2006 WL 3422181, at *2 (N.D. Ill. Nov. 28, 2006)); *see also Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992); Fed. R. Civ. P. 26(b)(5). Generic descriptions of documents in a privilege log are insufficient as the other party's cannot assess the claim. *See Nucap Industries Inc. v. Robert Bosch LLC,* 15 cv 1107, 2017 WL 3624084 at *1 (N.D. Ill. Aug. 23, 2017). "[C]ompliance with Rule 26(b)(5)(A) is not optional." *Rossman v. EN Engineering,* LLC, 335 F.R.D. 171, 172 (N.D.Ill. 2020).

Despite the clarity of the law concerning what is required to support claims of privilege, Plaintiffs' privilege log indiscriminately asserts the "work product" privilege for virtually all of

4

the thousands of entries on their logs. Plaintiffs assert work product for periods of time for which there is no plausible basis and without identifying any anticipated litigation. *See* **Exhibit 7**.

Plaintiffs likewise assert attorney-client privilege on an indiscriminate basis for adjuster claim notes in which in house counsel may have input, but it is clear the documents were created in the course of claims handling - the business function of the insurance company. Simply copying attorneys on communications or communications with in-house counsel does not make the documents privileged. *See Kleen Products LLC v. International Paper, et al*, 10 C 5711 2014 WL 6475558 at *1 (N.D. Ill. Nov. 12, 2014)(addressing improper assertions of privilege for communications with counsel about the business of the companies rather than seeking or providing legal advice).

Plaintiffs also fail to identify the recipients of many of the documents they withheld; failed to identify the roles or responsibilities of *any* the individuals who authored or received communications other than to identify some as in-house or outside counsel; failed to identify the roles played by the dozens and dozens of people who were involved in the communications; and failed to provide descriptions that indicate that the information withheld was legal advice. All of this information was *required* of Plaintiffs to meet their burden. *See RBS Citizens, N.A. v. Husain,* 291 F.R.D. 209, 217 (N.D. Ill. 2013). And the failure to provide it is fatal to their claims of privilege.

Plaintiffs' non-compliance with Rule 26(b)(5) warrants a finding that their generic claims of privilege have been waived. *See Motorola Solutions, Inc.*, 2018 WL 1281393 at *2 (discussing the waste of judicial resources that results from inadequate privilege logs); s*ee also Buonauro v. City of Berwyn*, No. 08 C 6687, 2011 WL 3754820, at *8 (N.D. Ill. Aug. 25, 2011) (citing *United States v. BDO Seidman,* 337 F.3d 802, 811 (7th Cir. 2003)); *United States v. White,* 950 F.2d 426,

430 (7th Cir.1991); *Babych v. Psychiatric Solutions, Inc.,* 271 F.R.D. 603, 608 (N.D .Ill. 2010) ("[A] timely and adequate privilege log is required by the federal rules, and ... failure to serve an adequate privilege log may result in a waiver of any protection from discovery.")). Sanctions are warranted here in the context of defects such as those asserted by Plaintiffs' defective grossly over-broad assertions of privilege, especially where the defects have been identified to Plaintiffs and left uncorrected. *See Urban 8 Fox Lake Corporation, et al v. Nationwide Affordable Housing Fund 4, LLC, et al.*, 334 F.R.D. 149, 165 (N.D. Ill. 2020) (imposing as a sanction the reasonable fees incurred in addressing a defective privilege log similar to that offered by Plaintiffs). The errors are not inadvertent but are intentional or reckless.

### A. The Work-Product Privilege Is Narrow and Can Only be Claimed For Documents Created Specifically in Anticipation of Litigation.

The work product doctrine can only attach once litigation is anticipated. *Allendale Mut. Ins. Co.*, 145 F.R.D. at 87. "Materials created in the ordinary course of business which may have the incidental effect of being helpful to litigation are not privileged under the work product doctrine." *See RBS Citizens, N.A.*, 291 F.R.D. at 217. Generally, "documents created by an insurance company before a coverage decision is related to a potential insured are not work product." *Lagestee-Mulder, Inc. v. Consolidated Ins. Co.*, No. 09 C 7793, 2010 WL 4781461 (N.D. Ill. Nov. 17, 2010)(citing *Country Life Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, No. 03-1224, 2005 WL 3690565, at *7 (C.D. Ill. Jan. 31, 2005). In the present case, Plaintiffs assert work product claims over the adjusters' claims notes and internal file notes years before the inception of the coverage litigation presumably to conceal missteps in the manner in which Plaintiffs conducted their business.

"A party that asserts the work product privilege bears the burden of establishing that *the primary motivating purpose* behind the creation of a document or investigative report was to aid

6

in possible future litigation." *Charvat v. Valente*, 82 F.Supp.3d 713 (2015) (citing *E.E.O.C. v. Commonwealth Edison,* 119 F.R.D. 394, 395 (N.D. Ill. 1988)(emphasis added) (citation omitted). That "litigation actually ensues or that a party has retained an attorney, initiated investigations, or engaged in negotiations over a claim, is insufficient to dispositively establish anticipation of litigation." *Allendale*, 145 F.R.D. at 87 (citing *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 660 (S.D. Ind. 1991). "Even if prepared by lawyers and reflecting legal thinking, '[materials] assembled in the ordinary course of business … or for other nonlitigation purposes are not under the qualified immunity provided by the doctrine and Fed. R. Civ. P. 26." *Towne Place Condominium Association v. Philadelphia Indemnity Insurance Company*, 284 F. Supp.3d 889, 899 (N.D. Ill. 2018)(quoting *United States v. Textron Inc. & Subsidiaries*,577 F.3d 21, 29-30 (1st Cir. 2009))(rejecting work product claims for documents consisting of updates of events).

Plaintiffs have asserted the work product privilege for every single entry with the exception of a handful: asserting this claim in boilerplate fashion in more than 1,600 entries. Given the dates on which the documents withheld were created (or the fact that some of the entries are undated), Plaintiffs plainly fail to satisfy their burden of establishing the elements required of a party seeking to shield materials from disclosure pursuant to the work product privilege. Strikingly, only *one* of the 1,600 descriptions even mention anticipated litigation or the current coverage lawsuit.

This lawsuit, which deals with two separate tenders under the relevant policies, was filed on November 15, 2015. Walsh tendered its claim to Plaintiffs on January 21, 2010, five years earlier. LB Steel, Plaintiffs' named insured, tendered its claim to Plaintiffs on September 14, 2014, and was communicating with the insurer about the underlying litigation going back to 2010. Plaintiffs *never* denied Walsh's tender as an additional insured under the relevant policies and did not deny LB Steel's tender until April 10, 2015.

In August 2015, LB Steel and Plaintiffs entered into a tolling agreement, which was terminated in November 2015. Prior to this time, Plaintiffs clearly did not anticipate any litigation – and critically, there is nothing in any of the log entries to suggest that they did. In communications that somehow managed to evade redaction, the adjuster responsible for the handling of the claims suggested multiple times through 2011-2012 that Plaintiffs intended to "lay low" as "no one was looking to [them] for anything." Through this lawsuit, Walsh also seeks to collect on a judgment entered against LB Steel in favor of Walsh, in the amount of approximately $19 million, and the policies at issue in this litigation provide that suit may only be brought against the Plaintiffs once a final judgment has been rendered. *See e.g.,* Dkt. 60-5, p. 99. Litigation between Walsh and Plaintiffs as to the 19 million dollar judgment could not even have began any earlier than October 14, 2015, the date of the judgment.

It is clear from the few documents Plaintiffs produced and from the policy language that the earliest litigation *may* have been anticipated was as of August 2015, but more likely October 2015. Yet, Plaintiffs have asserted work product for literally hundreds (if not over one thousand) of entries prior to August 2015. Any documents withheld by Plaintiffs as "work product" from before August 2015 *cannot* qualify as such. By their indiscriminate and baseless generic invocation of the work product privilege, Plaintiffs waived those claims. All of the documents created prior to August 2015 that have been withheld by Plaintiffs as "work product" should be produced.

    **B.**    **Plaintiffs' Claims of Attorney-Client Privilege Fail.**

Under Illinois law[3], to establish that the attorney-client privilege exists, the withholding party must show that that the statements, "(1) were made to an attorney acting in his or her legal

---

[3] This matter arises under the Court's diversity jurisdiction, and it is uncontested that Illinois law applies to the coverage dispute and consequently, the attorney-client privilege will be governed by Illinois law. F.R.E. 501.

capacity; (2) originated in a belief that they would not be disclosed; (3) involved legal advice; and, (4) remained confidential." *Stopka v. Am. Family Mut. Ins. Co.*, 816 F. Supp. 2d 516, 523 (N.D. Ill. 2011)(citing *Consolidation Coal Co. v. Bucyrus–Erie Co.,* 89 Ill.2d 103, 119, 432 N.E.2d 250 (1982)). Plaintiffs' privilege log fails to identify information sufficient to determine whether the attorney-client privilege applies to the withheld documents addressed below.

        **i.**        **Claim Notes Reflecting Purported Communications between Plaintiffs and Counsel, Where Counsel Merely Adjusted the Claim, Should be Produced.**

Plaintiffs' claim notes allegedly reflecting communications with in-house counsel or coverage counsel, where counsel was at most acting as an adjuster, should be produced.[4] *See Chicago Meat Processors, Inc. v. Mid-Century Ins. Co.*, No. 95 C 4277, 1996 WL 172148, at *3 (N.D. Ill. Apr. 10, 1996)(ordering that documents generated by an attorney in the ordinary course of claims evaluation should be produced). "The increasing inclusion of attorneys in business discussions and decisions has 'increased the burden that must be borne by the proponent of corporate privilege claims relative to in-house counsel.'" *See RBS Citizens, N.A.,* 291 F.R.D. at 217 (quoting *Acosta v. Target Corp.*, 281 F.R.D. 314, 322 (N.D. Ill. 2012)).

Courts commonly presume that where in-house counsel is involved, the attorney's input is more likely business than legal in nature. *See Urban 8 Fox Lake Corporation, et al.*, 334 F.R.D. at 158. "Not every communication between counsel and client is privileged, and a communication is not necessarily privileged simply because it was sent to or by an attorney." *Country Life Ins. Co.*, 2005 WL 3690565, at *5. "To the extent that an attorney acts as a claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the attorney-client privilege does not apply." *Id*. (citing *Mission National Company v. Lilly,* 112 F.R.D. 160, 163 (D.

---

[4] These entries are found in the first five pages of Plaintiffs' eight-page privilege log. Ex. 6.

Minn.1986); *Allendale,* 152 F.R.D. at 137 ("The fact that the material was produced originally by a lawyer is irrelevant if, as is the case here, the material reflects ordinary insurance information.")(additional citations omitted). Moreover, "[W]here allegations of bad faith exist against an insurance company, the plaintiff insured is entitled to know the substance of the investigation, the information available and used to make a decision, and the evaluations and advice relied upon for the decision." *Prisco Serena Sturm Architects, Ltd. v. Liberty Mut. Ins. Co.*, No. 94 C 5716, 1996 WL 89225, at *1 (N.D. Ill. Feb. 27, 1996) (internal quotations omitted) (citations omitted).

The redacted adjuster claim notes are described with the boilerplate statement: "Claim Note re: Confidential communication with Claim Legal Group[5] (in-house counsel) for the purpose of discussing legal advice and strategy," (**Exhibit 8**) or "Claim Note re: memorializing confidential and privileged communication (sic) R. Dunne, Esq. (external coverage counsel) with respect to legal advice and strategy." Ex. 5, p. 1-5. At the time the majority of these claim notes were created, there was no pending litigation, and Plaintiffs had not made, and certainly had not communicated, a coverage determination. At the time some of these notes were created, Plaintiffs were still requesting and reviewing information from Walsh putatively for the purpose of making the business decision as to whether Walsh's claim was covered. But no denial was even communicated to Walsh.

Plaintiffs' refusal to produce these documents is part of an improper effort to conceal their internal vexatious mishandling of the insurance claims. Based on unredacted claim notes that apparently slipped by the redaction "pen," Plaintiffs were undertaking the business action of evaluating Walsh's claim with "CLG" to make the business decision concerning coverage and for

---

[5] The description is also defective because it fails to identify the recipient or recipients if it is in fact a "Group" as described in the entry.

input on a possible denial letter. Any advice provided by in-house or outside coverage counsel prior to August 2015, related exclusively to making the business decision of whether to extend coverage to Walsh.

Simply describing a communication as "discussing legal advice and strategy" does not make the adjuster's claim notes privileged. *Urban 8 Fox Lake Corporation, et al ,*334 F.R.D. at 158 (Simply "saying so does not make it so."). At best, the timing and the documents produced by Plaintiffs show that "Claim Legal Group," a group whose membership Plaintiff fails to identify, and Rory Dunne, appear to have been engaged in the business function of making Plaintiffs' coverage determination. Such a business decision, even where it involved the participation of an attorney or attorneys in communications, is not privileged. *See Id.*; *Towne Place Condominium Association*, 284 F. Supp. 3d at 899. Further, in this litigation involving Plaintiffs' bad faith adjustment of Walsh's claim, Walsh is entitled to the information and thought process of the insurance company in reaching *its* decision. Based on the record presented by Plaintiffs, the claim notes that have been improperly withheld must be produced.

### ii. The Attorney-Client Privilege Does Not Apply Where the Description Fails to Indicate Legal Advice was Being Sought or Proffered.

For the attorney-client privilege to attach, the communication must contain actual legal advice. *See Square D Co. v. E.I. Elecs., Inc.*, 264 F.R.D. 385, 390 (N.D. Ill. 2009). The privilege log must provide information to show that the disclosure of the document would reveal directly or indirectly, the substance of a confidential attorney-client communication. *Schmalz*, 2018 WL 741395, at *2 (citing *Heriot v. Byrne*, 257 F.R.D. 645, 666 (N.D. Ill. 2009)). Generic assertions that documents "reflect legal advice" are also insufficient. *RBS, Citizens, N.A.*, 291 F.R.D at 220-21.Yet, Plaintiff *only* uses generic privilege assertions – and always fails to indicate any basis from which to assess whether the document withheld reveals legal advice.

11

Plaintiffs use essentially five "descriptions" to account for approximately 1,285 of 1,600 privilege log entries. The rote assertions of privilege include the phrase "legal advice" but that, alone, is insufficient. Plaintiffs' five boilerplate descriptions are: "Email redacted based on discussions with J. Huckenpoehler, Esq. (Travelers in house counsel) re: legal advice and strategy (**Exhibit 9**); Email re: information sent to R. Dunne, Esq. for the purpose of legal opinion and advice; Email re: Confidential communication involving in-house counsel for the purpose of rendering legal advice regarding coverage (**Exhibit 10**); Email redacted based on confidential communication between J. Huckenpoehler, Esq. (Travelers in house counsel) and R Dunne, Esq. (Travelers outside coverage counsel) re: legal advice and strategy (Ex. 10); and Email re: Confidential communication between outside counsel and in-house counsel for purpose of rendering legal advice regarding coverage (Ex. 10). Plaintiffs repeat these catch-phrase hundreds of times, but these descriptions are a far cry from compliance with the requirements of Rule 26(b)(5).

For example, TRAV 19207 and TRAV 3476 are identical emails, and Plaintiffs asserted privilege only as to TRAV 3476[6]. We know from the unredacted email that the adjuster, Dawn McKeever, requested Jason Hitchings, Travelers' counsel who works through a captive law firm not involved in the underlying litigation, "to check on the status of this case for me when you return to the office?" Plaintiffs' description of this alleged privileged communication is, "[e]mail redacted based on discussions with J. Huckenpoehler, Esq. (Travelers in house counsel) re: legal advice and strategy." Based on the comparison, it is clear that the information that has been

---

[6] Plaintiffs' designated 100% of the documents produced by them as "confidential" ignoring the definition of "confidential" found in §2 of the Court's Confidentiality Order. Dkt. #88. Incredibly, Plaintiffs ignored the Court's order and designated documents including pleadings from public record as confidential. Consequently, Walsh has not included these documents as exhibits.

withheld is, at most, purely factual gathering which is not equivalent to legal advice and is plainly not privileged. *See Nucap Industris, Inc.*, 2017 WL 3624084 at *2. This example underscores that the descriptions offered by Plaintiffs are unlikely to be accurate and far more likely to be generic copy and paste entries.

One of the five descriptions used throughout the privilege log, indicates J. Huckenpoehler (an in-house lawyer with an unidentified role) may been included in this email exchange but is not identified as either the recipient or author of the email exchange in many of these entries, and apparently only discussed if the email should be redacted. *See* Ex. 9. Likewise, emails containing *information* that will ultimately *be used for legal advice* does not indicate the email *includes or reveals* legal advice. **Exhibit 11**. Again, an email regarding "Confidential communication between outside counsel and in-house counsel for purpose of rendering legal advice regarding coverage" does not state that the email itself reveals or contains the legal advice. *See* Ex. 10. Yet, Plaintiffs chose these generic descriptions as the basis of **over one thousand privilege claims**. These redactions are all indicative of the improper approach followed by Plaintiffs in their blanket assertions of privilege in every communication in which an attorney may be copied.

Given Plaintiffs' failure to rectify this issue over the last five months, Plaintiffs' claims of privilege where the description fails to identify that actual legal advice is being communicated, encompassing nearly every entry on the logs, fails, and the documents must be produced.

      **iii.    Distribution of Otherwise Privileged Documents to Third Parties, Individuals Outside the Control Group, or Unidentified Individuals Destroys Privilege.**

Illinois follows the "control group" test, and distribution of information to employees outside the company's control group destroys the attorney-client privilege. *Midwesco-Paschen Joint Venture For Viking Projects v. Imo Indus., Inc.*, 265 Ill. App. 3d 654, 664, 638 N.E.2d 322, 329 (Ill. App. 1994). To establish that an individual is within the control group, the producing

13

party must identify that the individuals are within a tier of employees, "whose advisory role to top management in a particular area is such that a decision would not normally be made without [their] advice or opinion, and whose opinion in fact forms the basis of any final decision by those with actual authority." *Caremark, Inc. v. Affiliated Computer Services, Inc.*, 192 F.R.D. 263, 65–6 (citing *Consolidation Coal Co.*, 89 Ill.2d at 120, 432 N.E.2d 250, 1952 (Ill. 1982))(internal quotations omitted). In the present case, Plaintiffs failed to provide this information for *any* of the dozens and dozens of people who received the communications they now seek to shield as "privileged" – in addition to the unknown numbers of people who received the documents as parts of groups whose members have not been identified. The identity of the authors and recipients, as well as that individual's role or responsibility in the matter, is critical in establishing a claim of attorney-client privilege for documents distributed to employees of the company. The burden to establish these elements rests on the producing party. *Id*. at 265.

In the first 35 pages of Plaintiffs' supplemental privilege log, Plaintiffs identify over 50 individuals as recipients or authors of purported attorney-client privilege communications. **Exhibit 12**. Some include Sean Milligan; Jonathan Alter; Alicia Barton; Peter B Bernier; Robert Berry; Robert Clark; Vincent Columbia Jr., Esq. Fatally, not a single one of these named individuals was identified in Plaintiffs' interrogatory answers as someone who participated in, was consulted about, or had any role in the coverage determination by Plaintiffs for either the LB Steel claim or the Walsh claim and therefore outside of the control group. *See* **Exhibit 13**, #1, 2, 5 and 6. Certainly, communications shared with LB Steel's attorney, Jeff Bowen, who is no way affiliated with Plaintiffs, and is actually adverse to Plaintiffs, waives any attorney-client privilege as the document was shared with someone squarely outside of Plaintiffs' control group. Ex. 12, TRAV 3629.

Moreover, Plaintiffs withheld documents identifying an entire group or database as the recipient but failed to identify any of the individuals that would have access to these documents, and thus waiving the privilege. See **Exhibit 14**; *Pryor v. Target Corp.*, No. 20-CV-28, 2020 WL 6149569, at *3 (N.D. Ill. Oct. 20, 2020). In *Pryor*, Target identified the recipients or authors of withheld documents as "Target Support," "Target Human Resources Representative," and "Target Store-T2087" but did not identify the individuals who made up those groups. *Id*. The Court held that the attorney-client privilege could not apply in those instances where "Target …neglected to explain those individuals' roles and responsibilities. Without that information, the Court cannot apply the control group test because the Court cannot know whether these individuals are top-level managers with decision-making authority, or employees with more limited responsibilities." *Id*.

Here, as in *Pryor*, Plaintiffs identified groups as the recipient rather than identifying any of the people within the group. Plaintiffs identified Claim File Notes, Claim Legal Group; Claim File; BI Document Management, and Claim Legal Administration, Claims Department as recipients. *See* Ex. 14. However, Plaintiffs failed to identify who encompasses the groups or the individuals who access or receive these documents.

Because Plaintiffs failed to identify how any of these recipients could fall within the Plaintiffs' control group, the privilege should be waived, and the documents produced.

### III. Conclusion

For the foregoing reasons, Walsh asks that the Court order the production of all documents included in Plaintiffs privilege log as identified above, including unredacted claim notes and communications prior to August 2015, the attorney's fees and expenses incurred by Walsh in bringing this motion, and for any other relief the Court deems just.

February 19, 2021									Respectfully submitted,

											Walsh Construction Company

											By: */s/ David B. Goodman*
												One of its Attorneys

David B. Goodman – dg@glgchicago.com
Illinois ARDC No. 6201242
Kalli K. Nies – kn@glgchicago.com
Illinois ARDC No. 6318089
Carrie E. Davenport – cd@glgchicago.com
Illinois ARDC No. 6289322
Goodman Law Group | Chicago
20 North Clark Street, Suite 3300
Chicago, Illinois  60602
(312) 626-1888

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 19, 2021, I electronically filed the foregoing document with the Clerk of Court and served all counsel of record using the CM/ECF system.

                                    /s/ *David B. Goodman*
                                        David B. Goodman