## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ST. PAUL GUARDIAN INSURANCE COMPANY, *et al.*, | ) ) ) | No. 15 CV 10324 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Magistrate Judge Young B. Kim |
| WALSH CONSTRUCTION COMPANY, | ) ) ) | |
| Defendant. | ) ) | October 12, 2021 |

### MEMORANDUM OPINION and ORDER

Plaintiff St. Paul Guardian Insurance Company ("St. Paul") filed a declaratory judgment action against Defendant Walsh Construction Company ("Walsh") seeking a ruling that there is no coverage for Walsh under any policy for the final judgment Walsh secured against a third party, and that St. Paul did not owe a duty to defend or indemnify Walsh for its defense of the underlying lawsuit. Plaintiffs The Charter Oak Fire Insurance Company and Travelers Property Casualty Company of America later joined this action (collectively with St. Paul, "the Insurers"). Before the court is Walsh's motion to compel production of documents from the Insurers. For the following reasons, the motion is granted in part and denied in part:

### Background

This case presents a declaratory judgment action regarding an insurance coverage dispute between the Insurers and Walsh. The lawsuit arises from

underlying litigation involving work Walsh performed for the City of Chicago on the O'Hare Airport Façade and Circulation Enhancement Project ("Project") as the general contractor. A subcontractor on the Project, LB Steel, LLC ("LB Steel"), delivered defective products causing substantial damage to the Project. The Insurers had issued certain policies to LB Steel. Following the entry of a final judgment against LB Steel in favor of Walsh, LB Steel filed for bankruptcy and the Insurers filed this action to contest their obligation to satisfy the judgment Walsh secured against LB Steel.

Walsh contends in the current motion that the Insurers have improperly withheld discoverable evidence on the basis of spurious privilege claims. Walsh first served its written discovery requests on the Insurers in February 2020. (R. 105, Def.'s Mot. at 2.) After delays related to the COVID-19 pandemic, the Insurers produced their discovery responses—which included redacted documents unaccompanied by a privilege log—in July 2020. (Id.) The following day Walsh brought the lack of a privilege log to the Insurers' attention, (id. at 2 & Ex. 1), and the Insurers produced an eight-page privilege log in response, (id. at 2 & Ex. 2). Walsh identified defects in this log to the Insurers in early August 2020, (id. Ex. 3; R. 111, Def.'s Reply at 3), and the Insurers indicated that they would supplement their production and the log, (R. 105, Def.'s Mot. at 2; R. 110, Pls.' Resp. at 2).

The Insurers completed their supplemental production the following month, but this production again included redacted documents unaccompanied by a privilege log. (R. 105, Def.'s Mot. at 2-3; R. 111, Def.'s Reply at 3.) Despite their

promises, the Insurers did not provide Walsh with a supplemental privilege log by January 2021, and so Walsh again followed up with the Insurers by providing a detailed description of the inadequacies in the Insurers' privilege log. (R. 105, Def.'s Mot. at 3 & Ex. 4.)  In response to further prodding, the Insurers produced their supplemental privilege logs in February 2021.  (Id. at 3.)

However, Walsh concluded that these supplemental logs failed to cure the defects raised in its previous communications to the Insurers, (R. 111, Def.'s Reply at 4), and filed the current motion to compel that same month.  The case was then referred to this court in August 2021 for discovery supervision and other issues. After reviewing the parties' submissions on the current motion, the court concluded it could not resolve the dispute regarding certain withheld claim notes without conducting an *in camera* review of the same.  The court ordered the Insurers to submit these documents under seal for review and they did so on September 17, 2021, (R. 123).

## Analysis

Walsh argues that the Insurers' privilege logs are insufficient to support the claimed privileges, and that the Insurers' assertions of work-product immunity and attorney-client privilege are improper.  Walsh further asks this court to impose sanctions on the Insurers for the "intentional or reckless" defects in their privilege logs. (R. 105, Def.'s Mot. at 6.)  For their part, the Insurers devote the bulk of their opposition to arguing that the court should strike Walsh's motion for failure to comply with Local Rule ("LR") 37.2 and that the court is required to conduct an *in*

*camera* inspection of the disputed documents before ordering any production. (R. 110, Pls.' Resp. at 4-7, 9-10.)

## A.   Rule 37.2

As an initial matter, the Insurers ask the court to strike Walsh's motion to compel for failure to comply with Federal Rule of Civil Procedure 37(a)(1) and LR 37.2. The court declines to do so. Rule 37(a)(1) requires a party seeking to compel discovery to certify "that the movant has in good faith conferred or attempted to confer" with the opposing party to obtain the withheld material without court intervention. LR 37.2 further requires that the moving party either recite "the date, time and place" of the parties' telephonic or in-person conferences or explain why efforts at consultation were unsuccessful. In this case, Walsh has sufficiently complied with these rules, certifying that Walsh and the Insurers participated in a teleconference on January 21, 2021 "to discuss the defects in [the Insurers'] discovery responses." (R. 105, Def.'s Mot. at 3.) The Insurers argue that Walsh failed to engage in another Rule 37 conference after the supplementation of their privilege logs on February 8, 2021, and therefore did not comply with LR 37.2. But the Rules do not require endless negotiations. The parties here have gone back and forth for months regarding the adequacy of the Insurers' privilege assertions, (id. at 2-3; R. 111, Def.'s Reply at 3-4), and the Insurers' disclosure of their 296-page log failed to address these issues. The court's intervention here is appropriate.

**B.    Privilege Logs**

Next, Walsh objects to both the form and substance of the Insurers' assertions of privilege in their logs.  As to form, Walsh argues that the Insurers' "untimely and generic logs fail to establish the foundation required to support their claims of privilege under the requirements of Rule 26(b)(5)."  (R. 105, Def.'s Mot. at 4.)  These arguments focus on the use of "boilerplate" and "generic" language that fail to provide adequate information to evaluate the Insurers' privilege assertions. (Id. at 4-7, 11-13.)  As for substance, Walsh first argues that the work-product doctrine cannot protect documents created prior to August 2015 because that was the earliest date on which the Insurers could have anticipated litigation.  Turning then to the attorney-client privilege, Walsh argues that claim notes where an attorney contributes to claim adjustment reflect non-privileged business advice and that the Insurers' "[d]istribution of otherwise privileged documents to third parties, individuals outside the control group, or unidentified individuals destroys the privilege."  (Id. at 13.)

As an initial matter, the Insurers offer less than three pages of argument in response to Walsh's objections—and much of that argument reflects uncontroversial recitations of the law on privileges.  (Id. at 7-9.)  Conspicuously absent from the Insurers' opposition is any rebuttal to Walsh's form-based objections.  The court therefore accepts the Insurers' silence on these objections as assent and treats the

issue as having been forfeited.[1]  *See, e.g.*, *John K. MacIver Inst. for Pub. Pol'y, Inc. v. Evers*, 994 F.3d 602, 614 (7th Cir. 2021) ("A party who does not sufficiently develop an issue or argument forfeits it.").  For all documents except the disputed claim notes, this issue is sufficient to decide the matter.

Turning to the timeliness objection, Walsh fails to develop—and therefore waives—its argument that the Insurers' production of their privilege logs was untimely.  (See R. 105, Def.'s Mot. at 4 (making only a passing reference to the Insurers' "untimely" logs)); *Patrick v. City of Chi.*, 111 F. Supp. 3d 909, 913-14 (N.D. Ill. 2015) (finding that a party waives an argument as to timeliness where "there is no analysis, but only a conclusion.")  Nevertheless, the court admonishes the Insurers that the delay in producing the privilege logs here is unacceptable.  The Federal Rules of Civil Procedure require service of "a timely and adequate privilege log."  *Rao v. Bd. of Trs. of the Univ. of Ill.*, No. 14 CV 66, 2016 WL 6124436, at *7 (N.D. Ill. Oct. 20, 2016).  The record presents an account of inexplicable months-long delay with little indication of "good faith attempts at compliance" by the Insurers.  *Ritacca v. Abbott Lab'ys*, 203 F.R.D. 332, 335 (N.D. Ill. 2001).  "This insouciant attitude towards the privilege log requirement can have catastrophic repercussions, for the court can deem the claims of privilege waived."  *Kramer v. Am. Bank and Tr. Co., N.A.*, No. 11 CV 8758, 2015 WL 13735745, at *2 (N.D. Ill.

---

[1]  Here, the Insurers received an extension of time to file their response, (R. 109), and used only 11 of the 15 pages available to them.  *See* LR 7.1.  With ample time and space to develop additional arguments, the court views the Insurers' silence on this issue as a deliberate choice.

Aug. 17, 2015).  The court will not tolerate future willful or bad faith delays in this case.

Moving on to Walsh's objections to the form of the privilege logs, the court agrees that the Insurers' overwhelming reliance on generic and boilerplate language renders the logs (but for the exceptions noted below) deficient in supporting the claims of privilege.  As this case arises under federal diversity jurisdiction and the parties agree that Illinois law applies to their coverage dispute, (R. 105, Def.'s Mot. at 8 n.3), Illinois law governs the attorney-client privilege and federal law governs work-product immunity, *see* Fed. R. Evid. 501; *Babych v. Psychiatric Sols., Inc.*, 271 F.R.D. 603, 608-09 (N.D. Ill. 2010).  The Insurers bear the burden of establishing a privilege's applicability on a document-by-document basis, and the court construes the Insurers' assertions narrowly because "evidentiary privileges operate in derogation of the search for the truth and run counter to the public's right to every person's evidence."  *Urb. 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 334 F.R.D. 149, 156 (N.D. Ill. 2020).

Under Illinois law, the attorney-client privilege attaches "[w]here legal advice of any kind is sought from a lawyer in his or her capacity as a lawyer, the communication relating to that purpose, made in confidence by the client, is protected from disclosure by the client or lawyer, unless the protection is waived." *Robert R. McCormick Found. v. Arthur J. Gallagher Risk Mgmt. Servs., Inc.*, 2019 IL 123936, ¶ 19.  The federal work-product doctrine shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for

7

trial by or for [a] party or its representative." Fed. R. Civ. P. 26(b)(3)(A). The doctrine protects two types of work: (1) an attorney's thought processes and mental impressions; and (2) an attorney's fact-finding investigation. *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010).

A party withholding discoverable documents must produce a privilege log that "identif[ies] for *each* separate document the following information: the date, the author and all recipients, along with their capacities, the subject matter of the document, the purpose for its production and a specific explanation of why the document is privileged." *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. 2013) (emphasis in original) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 26(b)(5)(A)(ii). Such entries must describe the withheld documents "in a manner that allows the reader to assess the claim." *Surgery Ctr. at 900 N. Mich. Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 317 F.R.D. 620, 632 (N.D. Ill. 2016). This allows other parties and the court to evaluate whether the proponents of a privilege have met their burden of establishing its applicability. *Id.* As a result, courts frown on the use of boilerplate or conclusory language in privilege logs. *See Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, No. 15 CV 3187, 2020 WL 3977944, at *3 (N.D. Ill. July 14, 2020). To satisfy the requirements of Rule 26(b)(5)(A), the privilege log must "at least describe the subject matter to which the legal advice was directed." *Id.*

The Insurers' privilege logs largely fail to describe the subject matter of the underlying documents, instead typically restating the author and recipients and

using "confidential communication," "legal advice and strategy," or other similar conclusory language to complete the description. Such "boilerplate buzzwords," however, provide no descriptive information about the document's subject matter and are insufficient to establish a privilege's applicability to any given document. *See Smith-Brown v. Ulta Beauty, Inc.*, No. 18 CV 610, 2019 WL 2644243, at *1 (N.D. Ill. June 27, 2019) (finding privilege log descriptions "problematic" when limited to words such as "in anticipation of litigation" or "reflects legal advice"); *see also Towne Place Condo. Ass'n v. Phila. Indem. Ins. Co.*, 284 F. Supp. 3d 889, 899 (N.D. Ill. 2018) ("conclusory assertions are insufficient to carry the burden"); *Nucap Indus. Inc. v. Robert Bosch LLC*, No. 15 CV 2207, 2017 WL 3624084, at *1 (N.D. Ill. Aug. 23, 2017) (finding that the generic descriptor "Communication reflecting legal advice regarding anticipated litigation with Bosch" fails to meet the requirements of Rule 26(b)(5)); *Surgery Ctr.*, 317 F.R.D. at 632 (finding that descriptors including "Communication with counsel representing APA re: APA's interests" and "Email string re: report of potential claim" are inadequate.).

Here, the most common log entry uses many words to provide essentially no descriptive information—"Email redacted based on confidential communication between J. Huckenpoehler, Esq. (Travelers in house counsel) and R Dunne, Esq. (Travelers outside coverage counsel) re: legal advice and strategy," (R. 105, Def.'s Mot. Ex. 6). Restating that a document is redacted or listing its author/recipients provides a reader with no new information not available elsewhere in the log. And the phrases "based on confidential communication" and "re: legal advice and

9

strategy" are entirely conclusory. The applicable rules require a privilege log to provide enough information to assess whether, as claimed, the withheld communication was made in confidence and regarded legal advice or strategy. *See Washtenaw*, 2020 WL 3977944, at *3. Unfortunately for the Insurers, "saying so doesn't make it so." *Urb. 8*, 334 F.R.D. at 156; *see also Coltec Indus., Inc. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 373 (N.D. Ill. 2000) ("[D]escribing a document as 'legal advice' or 'work product' is not the same as *establishing* that the documents are immune from discovery.") (emphasis in original). Such log descriptions provide no subject-matter information or useful context the court can use to determine whether the document actually reflects privileged legal advice or work prepared in anticipation of litigation.

By contrast, descriptions like "Email re: Confidential communication involving in-house counsel for the purpose of rendering legal advice regarding coverage," (R. 105-6, Def.'s Mot. Ex. 6), come closer to hitting the mark. Despite the continued use of boilerplate phrases, at least this description informs the reader that the withheld document relates in some way to "coverage." But context matters, and this is a lawsuit in which the Insurers provide insurance coverage as the core of their business model. One would therefore expect most of their documents to relate to "coverage" in some respect. As a result, appending "regarding coverage" to a description in the Insurers' privilege logs does little to help the court understand the subject matter of a particular document or evaluate whether it was properly withheld as privileged. *See Coltec*, 197 F.R.D. at 373 ("describing a document as

'claim summary' will do nothing to distinguish it from perhaps thousands of others" in a case about insurance claim coverage). Indeed, at least 500 entries on the subject logs use the phrase "regarding coverage." (See R. 105, Def.'s Mot. Exs. 5, 6.) In this context such language simply does not help the court understand the subject matter of each withheld document or determine with particularity the applicability of each privilege claim.

In short, the privilege logs present the court with thousands of generic assertions of privilege from which it is unable to differentiate between the documents, much less assess the asserted privileges. Litigants "often get away with terse, conclusory descriptions because when a discovery dispute comes to court, the party claiming privilege has fleshed out its claims in its brief." *Surgery Ctr.*, 317 F.R.D. at 633. Here, however, the Insurers have not further explained their claims—they do not even try to rebut Walsh's arguments about their reliance on boilerplate language. As a result, and in view of the unexplained delays during which the Insurers could have produced adequate privilege logs, the court finds that they have failed to meet their burden to establish the applicability of the privilege and immunity doctrines they assert for all entries marked as "inadequate" in the tables below. As such, the Insurers must produce all documents so marked.

Additionally, a handful of privilege log entries either explicitly state "redacted in error" or provide so little information in their description that this court fails to understand how any claimed privileges may apply. The Insurers must of course produce any erroneously redacted documents, as well as any documents

for which they have provided no description in the privilege log—such entries fail to even attempt compliance with Rule 26(b)(5). The Insurers must also produce documents described as: "Email re: KCESD billing," (R. 105-6, Def.'s Mot. Ex. 6 at 134 (TRAV 012411-12412, TRAV 012412-12415), 179 (TRAV 013214)); "KCESD billing," (id. at 286 (TRAV 017530)); "Email re: coverage policy defense," (id. at 9 (TRAV 003653), 69 (TRAV 008849)); "Reserve information redacted," (id. Ex. 5 at 2-3 (TRAV-CL-WAL-000003, dated 01/27/10, 01/29/10, 02/11/10)); "Reserve redacted," (id. at 5 (TRAV-CL-WAL-000015, dated 11/15/13)); "Legal Coverage Referral," (id. at 8 (TRAV-CL-WAL-001229-1230)); and "Redacted portion of Claim Summary re: reserves," (id. at 8 (TRAV-CL-WAL-001334)). These descriptions offer no explanation as to how they satisfy the elements required by either the attorney-client privilege, *see McCormick Found.*, 2019 IL 123936, ¶ 19, or work-product doctrine, *see* Fed. R. Civ. P. 26(b)(3)(A), and therefore must be produced.[2] Such entries are marked in the tables below as "no basis."

The Insurers seek to forestall a ruling requiring them to produce documents, arguing that the court must first "conduct a document by document in-camera review of those documents over which privilege has been asserted." (R. 110, Pls.' Resp. at 10.) The court has discretion, however, over "[w]hether to conduct an *in camera* review to assess privilege claims." *Wier v. United Airlines, Inc.*, No. 19 CV 7000, 2021 WL 1517975, at *3 (N.D. Ill. April 16, 2021). Although courts often

---

[2] To the extent that the Insurers claim "irrelevance" as a privilege protecting any of these documents, the court notes that relevance provides no privilege or immunity from production and the time for objecting to a discovery request on relevance grounds has long since passed. *See* Fed. R. Civ. P. 34(b)(2).

review disputed materials *in camera* before compelling their disclosure, this court has no obligation to do so "if the review is not warranted." *Washtenaw*, 2020 WL 3977944, at *3. This court need not conduct an *in camera* review before ordering the production of withheld documents where, as here, the Insurers produced months-late privilege logs that fail to provide required information enabling the court to assess the claims asserted and the Insurers make no effort in their briefing to explain how such generic and boilerplate descriptions satisfy their burden of establishing the asserted privileges' applicability for each document. *See Surgery Ctr.*, 317 F.R.D. at 633-34 (citing *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005)).

However, except for the claim notes discussed in greater detail below, the Insurers have established the applicability of a privilege to their remaining log entries. Most of these entries reflect materials that are clearly protected work product: "Draft pleading relative to pending lawsuit from outside counsel re: the purpose of conveying legal advice and strategy," (R. 105-6, Def.'s Mot. Ex. 6 at 26 (TRAV 005484-5501), 41 (TRAV 006921-6939), 44 (TRAV 007124-7125, TRAV 007126-7142), 47 (TRAV 007233-7251), 48 (TRAV 007320-7321, TRAV 007322-7338), 77 (TRAV 010539-10557), 93 (TRAV 010892-10908), 193 (TRAV 013968-13986), 202 (TRAV 014441-14459), 242 (TRAV 016392-16410)); "Legal research reflecting attorney mental thoughts and impressions," (id. at 23 (TRAV 004746-4754)); "Legal research," (id. at 9 (TRAV 003633-3652)); and "Draft Complaint for Declaratory Judgment prepared by external coverage counsel," (R. 105-5, Def.'s Mot.

13

Ex. 5 at 8 (TRAV-CL-WAL-001286-1331)). These documents clearly reflect attorney preparation for litigation and fall squarely within the protections of the work-product doctrine. *See United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007).

Finally, a handful of additional log entries include just enough information to provide the needed context—when combined with other information in the logs—from which the court can conclude that the work product doctrine applies. Specifically, these include documents described as: "Request for BI Policy comment re: legal advice and strategy," (R. 105-6, Def.'s Mot. Ex. 6 at 27 (TRAV 005504), 196 (TRAV 014087)); "Email re: LB Steel claim conveying legal advice and strategy," (id. at 27 (TRAV 005506), 32 (TRAV 006139, TRAV 006337), 72 (TRAV 009172), 93 (TRAV 010909)); and "Handwritten notes memorializing confidential and privileged communications with J. Huckenpoehler, Esq. (in-house counsel) with respect to legal advice and strategy in the subject litigation," (R. 105-5, Def.'s Mot. Ex. 5 at 8 (TRAV-CL-WAL-001726-1740)).[3] Documents TRAV 005504 and TRAV 014087 appear to relate to document management in connection with this litigation. The court is satisfied with the likelihood, based on their dates and *in camera* review of the claim notes, that TRAV 005506, TRAV 006139, TRAV 006337, TRAV 009172, TRAV 010909 involve discussions of the Insurers' declaratory judgment strategy.

---

[3] The Insurers should note these specific, non-generic descriptors ("Request for BI Policy comment," "LB Steel claim," and "in the subject litigation") have value precisely because they help the court distinguish these documents from the thousands of others at issue in this discovery dispute. If hundreds of log entries applied these phrases as boilerplate, they would lose their explanatory value. The applicable rules require demonstrating "with particularity" the applicability of a privilege and do not permit shortcuts to escape the prohibition on "blanket claims of privilege." *Slaven v. Great Am. Ins. Co.*, 83 F. Supp. 3d 789, 796 (N.D. Ill. 2015).

And TRAV-CL-WAL-001726-1740 appears to memorialize a strategy conversation regarding this lawsuit. All such materials are protected work product. *See* Fed. R. Civ. P. 26(b)(3)(A).

## C. Claim Notes

Some of the claim notes in the Insurers' eight-page privilege log require additional analysis. The Insurers have already voluntarily disclosed the Walsh claim file ("Claim File") pursuant to a stipulation and subsequently waived any claims of privilege only as to those documents. (See R. 116, Def.'s Resp. to Pls.' Mot. for Protective Order [114] Ex. 2 (Stipulation), 3 (Claim File).) This disclosure and waiver resolve the dispute as to claim notes in the Claim File. (Compare id. Ex. 3 with R. 123, Pls.' Sealed Prod. at 32-75.) The court therefore focuses its analysis on the disputed claim notes from the Insurers' LB Steel claim file. (R. 105-5, Def.'s Mot. Ex. 5 at 1-2.)

The parties substantively dispute the applicability of the attorney-client privilege and work-product doctrine to these notes. The parties disagree as to whether these notes reflect privileged legal advice about a business decision or non-privileged business advice. Under Illinois law, "[t]he attorney-client privilege of confidentiality does not apply to documents discussing business advice instead of legal advice." *CNR Inv., Inc. v. Jefferson Tr. & Sav. Bank of Peoria*, 115 Ill. App. 3d 1071, 1076 (Ill. App. Ct. 1983). Further, when a corporation asserts attorney-client privilege, "privileged communications lose their privileged status if disseminated to persons not in the control group." *AU Elecs., Inc. v. Harleysville Grp., Inc.*, No. 13

CV 5947, 2014 WL 2429104, at *2 (N.D. Ill. May 28, 2014). Under this test, the "control group" is "defined as top management who have the ability to make a final decision or those without whose opinions a final decision would not ordinarily be made." *Pryor v. Target Corp.*, No. 20 CV 28, 2020 WL 6149569, at *2 (N.D. Ill. Oct. 20, 2020) (citing *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill. 2d 103, 119-20 (1982)). This test is more restrictive than the federal standard. *See McGee*, 2017 WL 1232616, at *2; *accord Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981).

Here, the privilege log and attached key list three authors of the disputed LB Steel claim notes: Dawn McKeever, John Huckenpoehler, and Nicolo D'Agostino. (See R. 105-5, Def.'s Mot. Ex. 5 at 1-2.) Of these, Huckenpoehler as senior counsel and D'Agostino as a second vice president appear to belong to "top management" within the context of this case. (See R. 110-1, Pls. Resp. Ex. A at 1-3.) Additionally, the claim notes demonstrate that McKeever exercised sufficient decision-making responsibility regarding the Walsh/LB Steel matter for the court to consider her part of the control group under the circumstances of this case.

With the above analysis in mind, the court performed an *in camera* review of the disputed claim notes to determine the extent to which they are privileged. Materials authored by D'Agostino, Huckenpoehler, and McKeever may be protected by the attorney-client privilege if the other elements of the privilege are established. Work-product immunity may apply to any of the documents, but only if the Insurers can "show that the document was prepared because of the party's subjective anticipation of litigation, as opposed to an ordinary business purpose, and that the

16

subjective anticipation was objectively reasonable." *Smith v. Bd. of Educ. of City of Chi.*, No. 17 CV 7034, 2019 WL 2525890, at *3 (N.D. Ill. June 19, 2019).

As such, the Insurers may plainly withhold as work product the following claim notes discussing their declaratory judgment strategy: TRAV-CL-LB-000003, dated 09/16/14, (R. 123, Pls.' Sealed Prod. at 2-3); TRAV-CL-LB-000004, dated 03/04/15, (id. at 10-11); TRAV-CL-LB-000004-7, dated 03/16/15, (id. at 12-16); TRAV-CL-LB-000007-8, dated 07/08/15 (id. at 17-19); TRAV-CL-LB-000008, dated 08/31/15, (id. at 20-21); TRAV-CL-LB-000009-11, dated 10/20/15 (id. at 24-27); and TRAV-CL-LB-0000011-13, dated 10/30/15, (id. at 28-31). Such claim notes clearly reflect materials created in anticipation of this litigation and are protected from disclosure. *See* Fed. R. Civ. P. 26(b)(3).

The Insurers may also withhold as attorney-client privileged TRAV-CL-LB-000004, dated 02/11/15, (R. 123, Pls.' Sealed Prod. at 8-9), because it memorializes the substance of a client's request for legal advice. *See McCormick Found.*, 2019 IL 123936, ¶ 19. The attorney-client privilege also protects TRAV-CL-LB-000008, dated 09/25/15, which reflects a very brief update from outside counsel regarding Walsh's underlying litigation. (R. 123, Pls.' Sealed Prod. at 22-23.) The Insurers hired outside counsel "to prepare and file a declaratory judgment action." (R. 110, Pls.' Resp. at 8.) As a result, the court is satisfied that even this brief note reflects a confidential communication relating to the provision of legal advice. *See McCormick Found.*, 2019 IL 123936, ¶ 19. In addition, the Insurers may redact a portion of TRAV-CL-LB-000004, dated 11/06/14. (R. 123, Pls.' Sealed Prod. at 4-5.) The first

two sentences merely narrate work performed by D'Agostino in the claim file, and neither reflects a request for legal advice or work completed in anticipation of litigation. As such, the Insurers may not withhold as privileged the first two sentences. The Insurers may redact, however, the next two sentences (beginning with "I have"). This latter half of the claim note discusses a request for legal advice and is therefore privileged. *See McCormick Found.*, 2019 IL 123936, ¶ 19.

Finally, the Insurers must produce the four notes labeled as TRAV-CL-LB-000004, dated 01/20/15. (R. 123, Pls.' Sealed Prod. at 6-7.) These notes list a series of documents apparently related to Walsh's underlying litigation "emailed and faxed" by Huckenpoehler without listing the recipients of those emails and faxes. (Id.) The Insurers therefore have failed to establish the attorney-client privilege's crucial communication element. *See McCormick Found.*, 2019 IL 123936, ¶ 19. Furthermore, Huckenpoehler describes in his declaration that "[his] opinion informs the basis of final decisions that are made by the claims team," (R. 110, Pls.' Resp. Ex. B, Huckenpoehler Decl.), and the final correspondence to LB Steel denying its tender was not sent until three months after he created these claim notes, (see id. at 8). Without offering more information, the Insurers have not established that Huckenpoehler created these notes in anticipation of litigation rather than to help inform the final business decisions of the claims team. The work-product doctrine therefore does not protect these documents from discovery, and they must be produced. *See Towne Place*, 284 F. Supp. 3d at 899.

### D.    Sanctions

Walsh also seeks sanctions against the Insurers because of their "defective grossly over-broad assertions of privilege." (R. 105, Def.'s Mot. at 6.) But Walsh fails to develop its argument for sanctions until its reply brief. (Compare id. with R. 111, Def.'s Reply at 13-15.) As previously noted, failure to develop an argument results in the forfeiture of that argument. *See, e.g.*, *MacIver Inst.*, 994 F.3d at 614. To the extent Rule 37(a)(5)(A) requires the court to consider awarding monetary sanctions, Walsh's motion is denied. "Discovery sanctions may only be imposed where a party displays willfulness, bad faith, or fault." *Am. Nat'l Bank and Tr. Co. of Chi. v. Equitable Life Assur. Soc. of the U.S.*, 406 F.3d 867, 877 (7th Cir. 2005) (internal quotation marks omitted). Walsh's sanctions argument in its reply brief focuses heavily on the Insurers' delays in producing its supplemental logs, (see R. 111, Def.'s Reply at 13-15), but the court notes that Walsh never sought court intervention because of these delays. The court refuses to order sanctions now for conduct Walsh previously tolerated. Additionally, Walsh has not demonstrated how the Insurers' generic log descriptions rise to the level of sanctionable bad faith. Absent more egregious conduct, *see Urb. 8*, 334 F.R.D. at 164-65, production of the disputed documents is the proper remedy for failure to comply with Rule 26(b)(5).

## Conclusion

For the foregoing reasons, Walsh's motion to compel is granted in part and denied in part. Walsh's motion is granted to the extent that the Insurers are ordered to produce all documents identified herein. With respect to the disputed

claim notes, the Insurers must produce the first two sentences of TRAV-CL-LB-000004, dated 11/06/14, (R. 123, Pls.' Sealed Prod. at 4-5). They must also produce TRAV-CL-LB-000004, dated 01/20/15, (id. at 6-7), in its entirety. With respect to the other entries on the Insurers' privilege logs, the tables below list descriptions (sorted by the frequency with which they appear), which the court finds insufficient to establish the applicability of a privilege as explained herein. The Insurers are ordered to produce all documents identified as inadequate ("A") or no basis ("B") in the following two tables. Finally, Walsh's motion is denied as to documents not identified to be produced and to its request for sanctions.

## A.  8-Page Updated Privilege Log[4]

| Privilege Description and Frequency | Ruling |
|---|:---:|
| Email re: discussion of legal advice and strategy.  13 entries. | A |
| Reserve information redacted.  3 entries. | B |
| Legal Coverage Referral.  2 entries. | |
| Redacted portion of e-mail with Travelers staff counsel re: discussion of legal advice and strategy.  2 entries. | A |
| Email re: information to be ultimately forwarded to J. Huckenpoehler, Esq. for legal opinion and advice.  1 entry. | |
| Redact portion of e-mail with Travelers staff counsel re: discussion of legal advice and strategy.  1 entry. | |
| Redacted portion of Claim Summary re: reserves.  1 entry. | B |
| Reserve redacted.  1 entry. | |

---

[4]  (R. 105-5, Def.'s Mot. Ex. 5.)

**B.  296-Page Supplemental Privilege Log[5]**

| Privilege Description and Frequency | Ruling |
|---|---|
| Email redacted based on confidential communication between J. Huckenpoehler, Esq. (Travelers in house counsel) and R Dunne, Esq. (Travelers outside coverage counsel) re: legal advice and strategy. 510 entries. | A |
| Email re: Confidential communication involving in-house counsel for the purpose of rendering legal advice regarding coverage.  476 entries. | |
| Email redacted based on discussions with J. Huckenpoehler, Esq. (Travelers in house counsel) re: legal advice and strategy. 247 entries. | |
| Email re: Confidential communication between outside counsel and in-house counsel for purpose of rendering legal advice regarding coverage. 35 entries. | |
| Email re: information sent to R. Dunne, Esq. for the purpose of legal opinion and advice.  17 entries. | |
| Email re: discussion of legal advice and strategy.  12 entries. | |
| Email re: documents uploaded for discussion of legal advice and strategy. 10 entries. | |
| Redacted in error.  10 entries. | B |
| Email re: meeting about legal advice and strategy.  8 entries. | A |
| Confidential communication with Claim Legal Group (in-house counsel) for the purpose of legal advice and strategy.  6 entries. | |
| Email redacted based on confidential communication between J. Huckenpoehler, Esq. (Travelers in house counsel) and L. Carwile, Esq. (Travelers outside coverage counsel) re: legal advice and strategy.  6 entries. | |
| Confidential communication with Claim Legal Group (in-house counsel) for the purpose of legal opinion and advice. 4 entries. | |
| Draft Document re: Confidential communication with Claim Legal Group (in-house counsel) for the purpose of legal opinion and advice.  4 entries. | |

---

[5]  (R. 105-6, Def.'s Mot. Ex. 6.)

| | |
|---|---|
| Email re: Confidential communication involving outside counsel and in-house counsel for purpose of rendering legal advice regarding coverage. 4 entries. | |
| Confidential communication with Claim Legal Group (in-house counsel) for the purpose of legal opinion and coverage advice. 3 entries. | |
| Email re: KCESD billing. 3 entries. | B |
| Correspondence from defense counsel to Travelers for the purposes of rendering legal advice and strategy. 2 entries. | A |
| Draft Document re: Confidential communication with Claim Legal Group (in-house counsel) for the purpose of legal advice and strategy. 2 entries. | |
| Email re: coverage policy defense. 2 entries. | B |
| Email re: information sent to R. Dunne, Esq. for the purpose of legal opinion and coverage advice. 2 entries. | A |
| Email re: legal opinion and advice. 2 entries. | |
| Request Report re: legal advice and strategy. 2 entries. | |
| comment re: legal advice and strategy. 1 entry. | |
| Correspondence redacted based on confidential communication between J. Huckenpoehler, Esq. (Travelers in house counsel) and P. Parker, Esq. (Travelers outside coverage counsel) re: legal advice and strategy. 1 entry. | |
| Email re: Confidential communication based on discussions with in-house counsel for the purpose of rendering legal advice regarding coverage. 1 entry. | |
| Email re: Confidential communication based on discussions with in-house counsel, J. Huckenpoehler and/or outside counsel R. Dunne for the purpose of coverage and strategy. 1 entry. | |
| Email re: Confidential communication based on discussions with in-house counsel, J. Huckenpoehler, and/or outside coverage counsel, R. Dunne with respect to legal advice and strategy. 1 entry. | |
| Email re: Confidential communication between in-house counsel and claim handler for purpose of rendering legal advice regarding coverage. 1 entry. | |

| | |
|---|---|
| Email re: Confidential communication between outside counsel and claim representative for purpose of rendering legal advice regarding coverage. 1 entry. | |
| Email re: Confidential communication between outside coverage counsel and in-house counsel for purpose of rendering coverage advice. 1 entry. | |
| Email re: Confidential communication involving in-house counsel. 1 entry. | A |
| Email re: discussion with in-house counsel re: legal advice and strategy. 1 entry. | |
| Email re: documents uploaded for discussion of legal advice and coverage strategy. 1 entry. | |
| Email re: information for the purpose of legal opinion and coverage advice. 1 entry. | |
| KCESD Billing. 1 entry. | B |
| Recommended Action re: Confidential communication with Claim Legal Group (in-house counsel) for the purpose of legal advice and strategy. 1 entry. | A |
| Redact comment re: legal advice and strategy. 1 entry. | |
| Redact comment reflecting legal advice and strategy. 1 entry. | |
| Redacted comment from J. Huckenpoehler, Esq. re: legal advice and strategy. 1 entry. | |
| [Blank.] 1 entry. | B |

**ENTER:**

_Young B. L_

Young B. Kim
United States Magistrate Judge