UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ST. PAUL GUARDIAN INSURANCE COMPANY, *et al.*, | ) )  No. 15 CV 10324 |
| Plaintiffs, | ) ) ) |
| v. | ) )  Magistrate Judge Young B. Kim |
| WALSH CONSTRUCTION COMPANY, | ) ) ) ) |
| Defendant. | )  October 13, 2021 ) |

**MEMORANDUM OPINION and ORDER**

Plaintiff St. Paul Guardian Insurance Company ("St. Paul") filed a declaratory judgment action against Defendant Walsh Construction Company ("Walsh") seeking a ruling that there is no coverage for Walsh under any policy for the final judgment Walsh secured against a third party, and that St. Paul did not owe a duty to defend or indemnify Walsh for its defense of the underlying lawsuit. Plaintiffs The Charter Oak Fire Insurance Company and Travelers Property Casualty Company of America ("Travelers") later joined this action (collectively with St. Paul, "the Insurers"). The parties are currently engaged in fact discovery, and Walsh seeks to depose John Huckenpoehler, Travelers's in-house attorney. Before the court is the Insurers' motion for a protective order barring Walsh from deposing Attorney Huckenpoehler. For the following reasons, the motion is granted:

## Background

This case presents a declaratory judgment action regarding an insurance coverage dispute between the Insurers and Walsh. The lawsuit arises from underlying litigation involving work Walsh performed for the City of Chicago on the O'Hare Airport Façade and Circulation Enhancement Project ("Project") as the general contractor. A subcontractor on the Project, LB Steel, LLC ("LB Steel"), delivered defective products causing substantial damage to the Project. The Insurers had issued policies to LB Steel. Following the entry of a final judgment against LB Steel in favor of Walsh, LB Steel filed for bankruptcy and the Insurers filed this action to contest their obligation to satisfy the judgment Walsh secured against LB Steel.

In February 2021 Walsh filed a motion to compel seeking the production of certain documents identified in the Insurers' privilege logs. (R. 105, Def.'s Mot.) In response to the motion to compel, Travelers produced some of the disputed documents ("Claim File") pursuant to a non-waiver agreement ("Stipulation"). (R. 116, Def.'s Resp. at 4.) In the Stipulation the parties agreed that by tendering the Claim File to Walsh, Travelers did not waive claims of privilege and confidentiality with respect to documents not produced. (Id. Ex. 2 at 1.) The Claim File includes notes from Travelers's claim examiners related to the claims at issue. (R. 116, Def.'s Resp. Ex. 3; R. 117, Pls.' Reply at 6.) Of significance to the current motion, Travelers's claims adjuster Dawn McKeever noted the following on December 12, 2011:

> [S]ince it appears parties are talking, we will go ahead and have staff counsel follow up again w/ the court to see what happened at the 9/11/12 hearing. Huck feels that we may not have to respond if the parties are settling we may want to lay low. [T]hey have yet to prove to us there is any property damage.

(R. 116, Def.'s Resp. Ex. 3 at 14.)

The Insurers also submitted a declaration from Huckenpoehler in response to the motion to compel. (R. 114, Pls.' Mot. at 4 & Ex. 2.) The declaration describes Huckenpoehler as a senior counsel in "Claim Legal-Construction" for Travelers, whose duties include providing legal advice to claims professionals. (Id. Ex. 2.) Huckenpoehler represents that he is not involved in the day-to-day handling of claims, does not "typically render advice on business issues," and does not have authority to process or resolve claims. (Id.) Nonetheless, in June 2021 Walsh noticed the deposition of Huckenpoehler. (Id. at 4.) Walsh seeks to question him regarding his declaration and the Claim File. (R. 116, Def.'s Resp. at 2-3.)

## Analysis

The Insurers argue that Walsh should be barred from deposing Huckenpoehler because as an attorney he provides legal advice during the claims process and cannot offer any non-privileged and relevant testimony if compelled to sit for a deposition. (R. 114, Pls.' Mot. at 5.) The Federal Rules of Civil Procedure generally permit "[a] party [to] take the testimony of any person . . . by deposition." Fed. R. Civ. P. 30(a)(1). Under these rules, a "blanket immunity" does not protect attorneys from being deposed. *Prevue Pet Prods., Inc. v. Avian Adventures, Inc.*, 200 F.R.D. 413, 418 (N.D. Ill. 2001). However, "the deposition of a party's attorney—

3

whether in-house or trial counsel—does impose more of a burden than the deposition of other fact witnesses." *Espejo v. Santander Consumer USA, Inc.*, No. 11 CV 8987, 2014 WL 6704382, at *3 (N.D. Ill. Nov. 25, 2014).

### A. Applicable Standard

In arguing the appropriateness of deposing Huckenpoehler, the parties rely on different legal standards. The Insurers point to *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986), in which the Eighth Circuit required the party seeking to depose an opponent's attorney to show that: "(1) no other means exist to obtain the information . . . ; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." Relying on *Shelton*, the Insurers argue that the court must strike the notice to depose Huckenpoehler because Walsh has failed to articulate why Huckenpoehler's deposition is necessary, why the information it seeks cannot be obtained through other means, or why this information is relevant. (R. 114, Pls.' Mot. at 8.) Walsh in turn cites a decision from this district, rejecting *Shelton* and finding that "[q]uestions of privilege must be assessed on a question-by-question basis," and that deposition testimony from attorneys can be "extraordinarily revealing" in discovering the truth. (R. 116, Def.'s Resp. at 8 (quoting *Armada (Singapore) Pie Ltd. v. Amcol Int'l Corp.*, 160 F. Supp. 3d 1069, 1071 (N.D. Ill. 2016)).) Based on this decision, Walsh asserts that it should be allowed to explore Huckenpoehler's testimony. (Id.)

4

Neither the Seventh Circuit nor the Supreme Court has adopted the *Shelton* standard, and district courts in this circuit are split as to its application. *Compare In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09 CV 7666, 2013 WL 5274296, at *2 (N.D. Ill. Sept. 18, 2013) (applying *Shelton* standard in granting motion for protective order to quash depositions of opposing party's trial attorney, general counsel, and in-house counsel), *with qad.inc v. ALN Assocs., Inc.*, 132 F.R.D. 492, 495 (N.D. Ill. 1990) (finding that *Shelton* standard "stated as a rule of law . . . must be viewed as wrong"). The court therefore turns to the Federal Rules of Civil Procedure for guidance.

Rule 26(b)(1) permits the parties to obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." This rule provides the courts with "broad discretion to tailor discovery narrowly." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). For example, courts have the power to enter a protective order for good cause shown and shield information from disclosure. Fed. R. Civ. P. 26(c)(1); *see also Crawford-El*, 523 U.S. at 599 (emphasizing power of the court to "limit the time, place, and manner of discovery, or even bar discovery altogether on certain subjects, as required" pursuant to Rule 26(c)). Where discovery sought is "unreasonably cumulative or duplicative, or obtainable from another source that is more convenient, less burdensome, or less expensive," courts may limit the frequency or extent of discovery allowed by the rules. Fed. R. Civ. P. 26(b)(2)(C)(i); *see also Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). As such, the

5

current motion requires the court to determine whether Huckenpoehler's deposition is likely to produce relevant, non-privileged information, and whether Walsh has exhausted other reasonable means to obtain the information it seeks from him.

**B.     Relevance**

It is axiomatic that if the information a party seeks in discovery is not relevant to the claims and defenses in the case, it is not subject to disclosure. Walsh asserts that any business advice Huckenpoehler provided regarding the claims at issue is relevant to its affirmative defense of estoppel. (R. 116, Def.'s Resp. at 3-5; R. 64, Def.'s Answer at 40.) To flesh out whether advice offered by Huckenpoehler was business or legal in nature, Walsh seeks to depose Huckenpoehler to investigate his role in "handling the claims at issue" and to discover additional information regarding his declaration and the Claim File. (R. 116, Def.'s Resp. at 2-3.) For support Walsh points to documents in the Claim File as evidence that Huckenpoehler provided business advice, not legal advice, when handling the subject insurance claims. (Id. at 4, 5-7.) In particular, Walsh highlights McKeever's note stating that "Huck feels that we may not have to respond if the parties are settling we may want to lay low," and argues that this note reflects business advice. (Id. at 1, 5, 9 & Ex. 3 at 14.) Walsh also cites a December 12, 2011 note authored by "JH" that it claims demonstrates Huckenpoehler's rendering of business advice regarding claims handling. (Id. at 6 & Ex. 3 at 12.) As additional evidence of Huckenpoehler's business role, Walsh points to McKeever's deposition testimony that Huckenpoehler participated in a claim transfer call. (Id. at 7 & Ex. 4 at 5.)

6

Walsh claims these examples show that Huckenpoehler provided business advice to Travelers's claim examiners, and in the process opened him up to a deposition exploring how such advice impacts Walsh's estoppel defense. (Id. at 3-5.)

In further support of its relevance argument, Walsh relies on the Illinois Supreme Court's decision in *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127 (1999). In *Ehlco*, the court considered whether a late-notice exception exists to the long-standing Illinois estoppel doctrine providing "that an insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured." *Id.* at 150. The court declined to adopt such an exception, holding that "[i]f an insurer believes that it received notice too late to trigger its [duty to defend], it should defend its insured under a reservation of rights or litigate the matter in a declaratory judgment action." *Id.* at 154. Applying *Ehlco* to the present case, Walsh argues that because the Insurers failed to respond to Walsh's tender and to product liability claims arising from the defective products supplied by LB Steel, the Insurers cannot assert policy defenses to its coverage claims. (R. 116, Def.'s Resp. at 3-4 (citing *Ehlco*, 186 Ill. 2d at 153).) Walsh identifies Huckenpoehler's "lay low" comment as material in precluding the Insurers from asserting policy defenses. (Id. at 4 (citing *Ehlco*, 186 Ill. 2d at 150).)

Walsh's argument falls short of establishing the requisite relevance of Huckenpoehler's testimony. Walsh, as the party requesting discovery, bears the initial burden of demonstrating relevance. *Eternity Mart, Inc. v. Nature's Sources,*

7

*LLC*, No. 19 CV 02436, 2019 WL 6052366, at *2 (N.D. Ill. Nov. 15, 2019) (citing *Rennie v. Dalton*, 3 F.3d 1100, 1110 (7th Cir. 1993)). Here Walsh fails to explain how Huckenpoehler's deposition would yield any material non-privileged information that would have any bearing on the estoppel defense. *See, e.g., Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA, Inc.*, No. 18 CV 0825, 2020 WL 1701861, at *8 (N.D. Ill. April 8, 2020) (denying motion to compel interrogatory response because party seeking discovery did not make sufficient attempts to explain connection between business relationship information it sought and its allegedly related damages theory). Without any explanation by Walsh as to the relevance of any specific non-privileged testimony to its estoppel defense, the court finds that Walsh has failed to meet its obligation to demonstrate that it should be permitted to depose Huckenpoehler. To investigate whether Huckenpoehler rendered business or legal advice when he made the "lay low" comment is neither here nor there because Walsh already has this information. There is simply no justification for deposing Huckenpoehler about information already disclosed to Walsh.

In any event, Walsh is either mistaken with respect to its characterization of the facts surrounding Huckenpoehler's alleged business role within Travelers or treats these facts too loosely. For example, Walsh points to a December 12, 2011 note in the Claim File, allegedly authored by Huckenpoehler, and argues that no privilege claim attaches to the note because it provides business advice concerning the handling of the claims at issue. (R. 116, Def.'s Resp. at 6 & Ex. 3 at 12.)

8

However, this note is identified only with the initials "JH," which actually correspond to claim examiner John Hackett, and not Huckenpoehler, as McKeever testified in her deposition. (R. 117, Pls.' Reply at 6 & Ex. 4 at 93-94.) As another example, Walsh points to McKeever's deposition where she identifies Huckenpoehler as the Regional Manager in explaining his involvement in a call about transferring a claim among Travelers's examiners. (R. 116, Def.'s Resp. at 7 & Ex. 4 at 4.) Yet a review of McKeever's deposition transcript shows that she identified another Travelers employee, Tambri Lawless, as the Regional Manager on two separate occasions, thus indicating that she misspoke in identifying Huckenpoehler as the Regional Manager. (R. 117, Pls.' Reply at 7 & Ex. 4 at 19, 155, 157.) Additionally, McKeever's testimony regarding the claim transfer call continues (beyond Walsh's narrowly selected lines provided in its exhibit) to note that Huckenpoehler participated in the call to provide legal answers to questions raised by claim examiners. (R. 116, Def.'s Resp. Ex. 4 at 4; R. 117, Pls.' Reply Ex. 4 at 156-58.)

While Walsh references these instances in the Claim File to sow doubt into Huckenpoehler's declaration in which he states that his role is purely legal, Walsh cannot point to any fact disclosed by the Insurers pursuant to the Stipulation that identifies Huckenpoehler's alleged business conduct or that he is a fact witness for purposes of this case. Accordingly, Walsh fails to establish that Huckenpoehler acted in a business capacity while advising Travelers's claim examiners. *See, e.g.*, *Rehling v. City of Chi.*, 207 F.3d 1009, 1019 (7th Cir. 2000) (holding that attorney-

9

client privilege barred evidence related to interactions between general counsel and police, where the Seventh Circuit determined that the general counsel was acting in his legal capacity, police identified themselves as the actual decisionmakers, and evidence showed that general counsel was not empowered to make business decisions and did not make business decisions).

**C.     Exhaustion**

Furthermore, Walsh failed to exhaust other reasonable means to secure the information it seeks from Huckenpoehler. Fed. R. Civ. P. 26(b)(2). "Where the deposition of an attorney can be avoided because the same information is available from other, non-privileged sources, it is prudent for the parties to pursue that course of discovery first." *Espejo*, 2014 WL 6704382, at *3 (granting defendant's motion for protective order to quash deposition of defendant's deputy general counsel because he was not sole source of that information). Courts in this district have required a party seeking to depose a party's attorney to exhaust other reasonable means of obtaining relevant information. *See, e.g.*, *Howard v. Securitas Sec. Servs., USA Inc.*, 630 F. Supp. 2d 905, 911 (N.D. Ill. 2009) (noting that party seeking to depose opposing counsel failed to show it had no other way to access information sought); *WMH Tool Grp., Inc. v. Woodstock Int'l, Inc.*, No. 07 CV 3885, 2009 WL 89935, at *3 (N.D. Ill. Jan. 14, 2009) ("[N]or can defendants show that it would be more difficult to obtain the information from a source other than [opposing counsel]."); *Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*, 257 F.R.D. 456, 464-65 (N.D. Ill. 2008) (finding that while information at issue is relevant and non-

10

privileged, that "does not mean, however, that the information must come directly from" opposing counsel); *B.F.G. by R.G. v. Blackmon*, No. 08 CV 1565, 2008 WL 11517594, at *4 (N.D. Ill. Dec. 9, 2008) ("Because the above categories of evidence which [defendant] seeks 'can be obtained from some other source that is more convenient, less burdensome, or less expensive,' a protective order barring [plaintiff]'s deposition is warranted here." (citing Fed. R. Civ. P. 26(b)(2)(C)(i)); *qad.inc.*, 132 F.R.D. at 495 (noting it is appropriate to limit deposition of opposing counsel if that information "may be derived at least as readily from a source other than the lawyer").

To the extent the estoppel inquiry requires a determination of whether the Insurers had a duty to defend Walsh, other non-attorney witnesses, including then-Travelers employee Nicolo D'Agostino, may testify to any alleged breach of duty by the Insurers. Additionally, Walsh had the opportunity to question McKeever extensively about Huckenpoehler's "lay low" comment and fails to explain how questioning Huckenpoehler would provide anything more. (R. 117, Pls.' Reply Ex. 4 at 111-31.) Walsh also has not identified what non-privileged information it hopes to gain from deposing Huckenpoehler regarding the "lay low" comment.

**D.    Waiver**

As to Walsh's claim that the Insurers placed Huckenpoehler's testimony at issue or waived their right to oppose his deposition by offering his declaration or producing the Claim File, the court disagrees. The Insurers voluntarily disclosed the Claim File in its entirety pursuant to the Stipulation and subsequently waived

11

any claims of privilege only as to those documents. (R. 116, Def.'s Resp. Ex. 2.) The Claim File includes a single communication related to Huckenpoehler, in which McKeever notes that "Huck feels that we may not have to respond if the parties are settling we may want to lay low." (Id. Ex. 3 at 14.) As to this statement alone, any attorney-client privilege pertaining to Huckenpoehler's "lay low" comment is waived. Having said that, the court's finding applies only to the statement made by McKeever referencing Huckenpoehler. *See, e.g.*, *Atl. Inv. Mgmt., LLC v. Millennium Fund I, Ltd.*, 212 F.R.D. 395, 400 (N.D. Ill. 2002) (finding that attorney-client privilege waiver "is limited by what plaintiffs have chosen to disclose" in their filings); *Goldman, Sachs & Co. v. Blondis*, 412 F. Supp. 286, 288 (N.D. Ill. 1976) (holding that waiver of attorney-client privilege for conversation between defendant and his attorney "must be construed as limited to that specific subject during that particular conversation"). Also, the act of submitting a declaration attesting to one's position as an attorney cannot be the basis for deposing him or her when the information included in the declaration has no relevance to the claims or defenses.

## Conclusion

For the foregoing reasons, the Insurers' motion for protective order is granted.

                                          **ENTER:**

                                          **Young B. Kim**
                                          **United States Magistrate Judge**